IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Aidan Tolnai, | ) |
|              Plaintiff, | ) **ORDER** |
|      vs. | ) Case No. 3:24-cv-242 |
| Aiden Bo Cornell, Dean Stork, and the University of Jamestown, | ) |
|              Defendants. | ) |

Hockey is a rough-and-tumble game. Equipped with skates, armed with sticks, and covered head-to-toe in protective gear, players are permitted—indeed encouraged—to violently crash into each other at high speeds in pursuit of a rubber disk called a puck. This is possible only because the legal rules that govern inside the rink are not the same that govern on the sidewalk, and what the law forbids in polite society, it permits on the ice. Still, "some of the restraints of civilization must accompany every athlete onto the playing field." Karas v. Strevell, 884 N.E.2d 122, 134 (Ill. 2008). This case—involving a player that allegedly calls himself the "jawbreaker"—tests those restraints. Plaintiff Aidan Tolnai's jaw was broken by Defendant Aiden Bo Cornell during the closing seconds of a hockey game in Jamestown, North Dakota. Tolnai sued Cornell, his coach Dean Stork, and the University of Jamestown. Defendants move to dismiss, and, for the reasons below, the motion is granted in part and denied in part.

**I.      BACKGROUND**

The following facts are taken from the complaint and are assumed to be true for purposes of deciding this motion: In 2023, Aiden Tolnai was a student and hockey player at Colorado State University. Doc. 1, ¶ 9. In January of that year, Colorado State University's hockey team played

the University of Jamestown in North Dakota. Id. ¶ 15. With fifty-seven seconds left in the game, Jamestown was leading seven-to-one, and their coach, Dean Stork, decided to play Aiden Bo Cornell. Cornell portrays himself on social media as the "jawbreaker." Id. ¶ 13. And Coach Stork and others knew Cornell "intentionally breaks jaws during hockey games." Id. ¶ 14.

Some of the following details are taken from a video submitted by Defendants: Cornell—the "jawbreaker"—enters the game with less than a minute left. Id. ¶ 16 Tolnai checks him on the side of the rink near the blue line and skates into the neutral zone. Cornell follows. Tolnai taps the puck while skating through the center circle, passing it back to a teammate. Cornell lowers his shoulder; Tolnai does not appear to notice him. See Doc. 13. Bringing his lowered shoulder up, Cornell "struck" Tolnai "with a blind side hit" to the face. Doc. 1, ¶ 21. Both players collapse. Cornell immediately gets up, Tolnai does not. The other players skate past Tolnai as he sits up in the center circle, alone. He suffered "severe physical injuries"—including a broken jaw. Id. ¶ 27. Cornell was escorted out of the arena.[1] See Doc. 14, p. 2.

Tolnai sued Cornell for battery, reckless misconduct, and negligence. Doc. 1, ¶¶ 20-32. He also sued Coach Stork for negligence and the University of Jamestown as vicariously liable for its employee. Id. ¶¶ 33-47. Defendants move to dismiss because Cornell's body check was an "inherent risk" of the game, and Tolnai assumed those risks when he stepped onto the ice. See Doc. 11, p. 3. Tolnai responds that his assumption of risk is a question of fact best left to a jury. See Doc. 14, p. 6.

---

[1] Neither party disputes the authenticity of the video, and the Court finds it embraced by the complaint. See Jackson v. Brooklyn Ctr., No. 21-CV-2072 (SRN/DJF), 2023 WL 2368032, at *5 (D. Minn. Mar. 6, 2023).

**II.     LAW AND DISCUSSION**

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). A complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Gorog v. Best Buy Co., 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570.

Tolnai's claims are tort claims. The law of torts attempts to "articulate and reinforce community standards" of reasonable conduct in society. See Dan B. Dobbs, et al., The Law of Torts § 1 (2d ed 2011). To commit a tort is to commit "a legal wrong that causes harm for which courts will impose civil liability." Id. § 19. And the general elements of a tort are the "existence of a duty, breach of that duty, and an injury proximately caused by the breach of duty." Schmidt v. Hess Corp., 2024 ND 72, ¶ 6, 5 N.W.3d 787, 791 (N.D. 2024). In general, individuals owe a duty to others to avoid injury, and the scope of that duty is called the standard of care. See Karas, 884 N.E.2d at 134.

The standard of care an individual owes another depends on their relationship and context. For example, in general, individuals owe a different duty to children than fellow adults; a bar owner owes a different duty to patrons than to strangers; and a landowner owes different duties to guests than to trespassers. See M.M. v. Fargo Pub. Sch. Dist. No. 1, 2010 ND 102, ¶ 15, 783 N.W.2d 806, 813 (N.D. 2010) (explaining that children are owed greater standard of care than

adults; Schmidt v. Gateway Cmty. Fellowship, 2010 ND 69, ¶ 8, 781 N.W.2d 200, 203 (N.D. 2010) (explaining distinction between landowner's duty towards lawful entrants and trespassers); Zueger v. Carlson, 542 N.W.2d 92, 97 (N.D. 1996) (explaining bar owners owe special duties to patrons). If Cornell had slammed into Tolnai somewhere other than inside a rink, it would undoubtedly be a tort. But if an ordinary standard of care is applied during a hockey game, every hit and check would be a basis for liability, and the game would buckle under the weight of a thousand lawsuits. See Karas, 884 N.E.2d at 130 ("[A] primary justification for limiting liability in the sports context is to avoid fundamentally altering, or discouraging participation in, the sport at issue."). So, the standard of care required of Cornell must be determined by looking to the "nature of the activity in question and on the parties' general relationship to [that] activity." See Knight, 834 P.2d at 709.

Courts have long applied a special standard of care on those engaged in sports. This is because "one who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary." Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 482, 166 N.E. 173, 174 (N.Y. 1929). "Just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball," so too does a hockey player consent to body checks and violent clashes. Id. Crafting a standard of care for players engaged in contact sports, like hockey or football, is challenging because "[p]layers . . . agree to undergo some physical contacts which could amount to assault and battery absent the players' consent." Gauvin v. Clark, 537 N.E.2d 94, 96 (Mass. 1989). An appropriate standard of care must be able to separate acceptable harms from unacceptable misconduct. And it must go beyond the rules of the game because "the competitive spirit of the participants will result in some rules violations" and those violations are "expected in the normal course." Jaworski v. Kiernan, 241 Conn. 696 A.2d 332, 337 (Conn. 1997).

4

Courts across the country have settled on a standard of care that requires players in contact sports to refrain from "reckless misconduct." Borella, 137 N.E.3d 437. This is "extreme misconduct outside the range of the ordinary activity inherent in the sport." Id. at 438. In other words, liability will attach where a player intentionally injures, or recklessly creates a risk of injury, through behavior outside the range of behavior inherent in the game of hockey. See Karas, 884 N.E.2d at 132. This standard draws "a line in a way that permits recovery for extreme misconduct during a sporting event that causes injury, while at the same time foreclosing liability for conduct which, although it may amount to an infraction of the rules, is nevertheless an inherent and inevitable part of the sport." Borella, 137 N.E.3d at 438. Other courts have adopted the same standard, though sometimes in different words. See e.g., Laughman v. Girtakovskis, 374 P.3d 504, 508 (Colo. App. 2015); Feld v. Borkowski, 790 N.W.2d 72, 77 (Iowa 2010); Ritchie-Gamester v. City of Berkley, 597 N.W.2d 517, 525 (Mich. 1999); Jaworski v. Kiernan, 696 A.2d 332, 338 (Conn. 1997); Knight v. Jewett, 834 P.2d 696, 710 (CA. 1992).

The North Dakota Supreme Court has not addressed this issue, but a standard of intentional or reckless misconduct aligns with their precedents. The North Dakota Supreme Court has recognized there is often no duty to protect against risk inherent in a sport or recreational activity. In Bouchard v. Johnson, it stated that ski operators "have no duty to—nor in fact can—protect against injuries caused by the inherent risks of skiing." 555 N.W.2d 81, 86 (N.D. 1996) (citing Murphy, 250 N.Y. at 480)). And in Olson v. Bismarck Parks & Recreation District, it acknowledged "winter sledding has many inherent risks and dangers," and that "[v]oluntary participants in sporting and recreational activities are presumed to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of the participation." 2002 ND 61, ¶ 16, 642 N.W.2d 864, 871 (N.D. 2022). True,

as Tolnai notes, Brouchard and Olson involved the application of recreational immunity statutes, but the principle that voluntary participation in a dangerous activity implies consent to certain injury-causing events applies in this case.

The principles explained above are sometimes stylized as a primary "assumption of risk," with a primary assumption of risk affecting a defendant's duty and a distinct, secondary assumption of risk affecting a plaintiff's fault. See Soderberg v. Anderson, 922 N.W.2d 200, 205 (Minn. 2019). This terminology has not been adopted by the North Dakota Supreme Court. It is also unnecessarily confusing because "[w]hat courts often call 'primary assumption of risk' is actually a doctrine about the defendant's liability or duty." See Restatement (Third) of Torts: Apportionment Liability, § 2 (2000). The principle applied and accepted by several state supreme courts is that sportsmen and sportswomen owe a particular standard of care to each other when engaged in contact sports, and that standard of care differs from the one applied in everyday life. See Laughman, 374 P.3d at 508 (internal quotation marks and citation omitted) ("[T]he standard of care rises as the inherent danger of the sport falls.").[2]

Likewise, this is not an issue of comparative fault to be decided by a jury, as Tolnai suggests. Tolnai is not "at-fault" or otherwise negligent for playing hockey. Cornell's duty to refrain from intentional and reckless misconduct affects the basis for liability in the first instance, not the apportionment of fault after liability has been determined. See Bouchard, 555 N.W.2d at 86 (immunity statute did not conflict with comparative fault statute because the immunity statute "aids in defining the ski area operator's duty"). And allowing a jury to apportion fault between

---

[2] Although Tolnai's "consent" is referenced at times, nothing turns on his subjective state of mind. See Knight, 834 P.2d at 709. The assessment of a defendant's duty is a "legal question" focused on the nature of the activity in question and the parties' relationship to the activity. See id.

players in the way Tolnai suggests would recreate the liability quandary for contact sports that a lowered standard of care is intended to solve.

Applying this standard, Tolnai's claims of negligence and reckless misconduct against Cornell must be dismissed. Checking is an inherent aspect of collegiate hockey, and players assume the associated risks when they step onto the ice. Under the relevant standard of care, Cornell could not engage in reckless misconduct outside those inherent in the game, but a check—even a particularly violent one— "is an inherent, fundamental part of the sport." Borella, 137 N.E.3d at 440. But a check is a fundamental aspect of hockey only if it is done for purposes animating the game—and not to injure an opposing player.

Tolnai's battery claim survives. The battery claim can proceed on the theory that Cornell "intentionally injure[ed]" Tolnai. See e.g., Knight, 3 Cal. 4th at 320. The principle that Tolnai accepted certain risks when he participated in a recreational activity applies with little to no force to intentional torts. See Szarowicz v. Birenbaum, 272 Cal. Rptr. 3d 272, 287 (2020) ("[I]ntentional conduct . . . is not to be confused with an intentional tort that alleges an intent to harm."). A skier, for example, accepts the risk a snowboarder may accidently crash into them, but fewer skiers would take to the slopes if a snowboarder could deliberately run into them. Likewise, players in contact sports understand injuries may occur incident to their participation in the sport, but fewer would play if their opponents could intentionally cause injuries. See e.g., id. at 284.

When an intentional act is inherent in a sport, not all forms of that intentional conduct are immune from liability. See id. at 287. And "a participant in an active sport breaches a legal duty of care to other participants if the participant intentionally injures another player." Id. So while a check is inherent in the game of hockey, a player breaches their standard of care if they check

7

another with the purpose of causing injury.³ In short, a hockey player unnecessarily increases the risks inherent in the sport by intentionally injuring a coparticipant. Id. at 286. And given the allegation of intent and the severity of the body check, Tolnai has plausibly pleaded a battery claim. Although the video of the incident has been received, it would be inappropriate to dismiss Tolnai's claim without further factual development.

Tolnai's claim against Coach Stork and the University of Jamestown also must be dismissed because they are negligence claims. The allegation that Coach Stork and others knew Cornell "intentionally breaks jaws during hockey games" (Doc. 1 ¶ 14) could save the claim from dismissal. See e.g., Kavanagh v. Trs. of Bos. Univ., 440 Mass. 195, 203 (Mass. 2003) (stating a defendant coach or school "would have to have specific information about a player suggesting a propensity to engage in violent conduct, or some warning that a player or players appeared headed toward such conduct as the game progressed" to state claim of recklessness). But because the complaint alleges it as a claim of negligence, it must be amended or dismissed.

## III.  CONCLUSION

Tolnai consented to some, but not all, injury-causing events when he stepped onto the ice. Tolnai has sufficiently pleaded that Cornell intended to cause an injury, so his battery claim can proceed. But Tolnai's claims of recklessness and negligence against Cornell, Dean Stork, and the

---

³ There are sports like boxing or martial arts where the intent to cause injury is an inherent aspect of the game. This is not true of hockey; a game where a team wins by scoring more goals, not knocking out the opposing team.

University of Jamestown are dismissed without prejudice. Defendants' motion (Doc. 10) is **GRANTED IN PART AND DENIED IN PART**. Given the extensive briefing on the motion, Tolnai's motion for a hearing (Doc. 15) is **DENIED**.

    **IT IS SO ORDERED.**

Dated this 28th day of August, 2025.

                                       */s/ Peter D. Welte*
                                       Peter D. Welte, Chief Judge
                                       United States District Court